1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

6
7
8

JEFFREY A. COOK,

9                              Plaintiff,

10        v.

11  KING COUNTY CORRECTIONAL
    FACILITY et al,,

12

CASE NO. 2:21-cv-00238-RSM-BAT

**REPORT AND
RECOMMENDATION**

13        Defendants move for summary judgment pursuant to Fed. R. Civ. P. 56, requesting the

14  Court dismiss Plaintiff's *pro se* § 1983 civil rights complaint. Dkt. 29. Plaintiff, who is currently

15  serving a sentence at the Stafford Creek Corrections Center Monroe, alleges Defendants violated

16  his rights when he was a prisoner at the King County Jail - Maleng Regional Justice by denying

17  him adequate care. He also requests the Court invalidate his pleas of guilt because he pled guilty

18  based upon the poor medical care Defendants provided.

19        Defendants' motion for summary judgment and *Rand* and *Wyatt* notice were filed on June

20  30, 2021. Dkts. 15-18. Plaintiff filed a response to the motion for summary judgment, dkt. 19,

21  and an addendum to his response. Dkt. 24. Additionally, on July 26, 2021, Plaintiff filed a

22  motion directing the Washington Department of Corrections to grant Plaintiff use of their video

23  conferencing tools for purposes of telephonic hearings, depositions, and trial. Dkt. 41. For the

REPORT AND RECOMMENDATION - 1

reasons below, this motion should be denied.

Plaintiff has also filed a series of motions which the Court addressed in its order of August 8, 2021, denying Plaintiff's motions for appointment of counsel, amendment of the complaint, and discovery. The Court, however, granted Plaintiff's request for additional time to file further responses to the motion for summary judgment directing he file such responses by August 30, 2021. The motion for summary judgment was renoted for September 3, 2021. Dkt. 42.

Plaintiff has not filed any further responses to the motion for summary judgment and as the noting date has lapsed, the matter is ripe for the Court's consideration. For the reasons below, the Court recommends GRANTING Defendant's motion for summary judgment, Dkt. 29, and DISMISSING the case with prejudice.

## BACKGROUND

### A.    The Complaint

In March 2021, Plaintiff filed a § 1983 civil rights complaint against King County Correctional Facility, Maleng Regional Justice Center (RJC), Benjamin Sanders, M.D., and King County Court. Dkt. 5 at 3-4.  Claim I alleges Defendants failed "to provide medical care by multiple jail and clinic staff." *Id.* at 5. Plaintiff claim when he entered the RJC he "was taking Tegrodol" for seizures. *Id.* He avers the jail should have discontinued this medication because he was diagnosed with "lukepeni."  However, the jail continued the prescription, causing health problems and the need for treatment at the ER. *Id.* After going to the ER, Plaintiff was prescribed Keppra but continued having seizures and began having vision problems. *Id.* at 6. Plaintiff avers from "December to January" he had "severe flu symptoms" and "psychiatric side effects with no care." *Id.* Plaintiff further avers that due to "the lack of care I suffered retinal detachment on

1    April 9, 2018." *Id.*

2        In Count II, Plaintiff alleges the guilty plea he entered was coerced due to the lack of

3    proper medical care. *Id.* at 7.

4        **B.    Defendant's Response to Factual Allegations**

5        Defendants contend the facts establish they were not deliberately indifferent to Plaintiff's

6    medical needs and Plaintiff's claim his plea was coerced due to a lack of medical care has been

7    rejected by the state courts and thus precluded from this Court's consideration. Dkt. 15 (motion

8    for summary judgment). Defendants aver Plaintiff was charged with crimes in King County

9    Superior Court and booked into the King County Jail on July 27, 2017. *Id.* at 2. Plaintiff pled

10   guilty on September 18, 2017. He appealed the conviction and the Washington Court of Appeals

11   rejected Plaintiff's claim his plea was coerced and affirmed the conviction. *Id.*

12       Defendants aver Plaintiff was provided adequate medical care during his incarceration at

13   the King County Jail between July 2017 and March 20, 2018. *Id.* at 3. Plaintiff names only one

14   individual defendant, Dr. Sanders, the Jail's medical director who supervises jail medical staff,

15   provides direct patient care, reviews records and is part of the jail's leadership team. *Id.*

16       When Plaintiff entered the jail, he indicated he had a neurological condition and had been

17   prescribed Tegretol for the condition. *Id.* at 3. Dr. Sanders had only one in-person contact with

18   Plaintiff. On July 26, 2017, Dr. Sangers examined Plaintiff and arranged for regular lab testing to

19   monitor any potential side effect of Tegretol. *Id.* at 4. He also The arranged to have Plaintiff be

20   seen by his treating neurologist Dr. Patricia Oakes, M.D., at the University of Washington

21   Medical Center on November 29, 2017. *Id.* Dr. Oakes adjusted Plaintiff's Tegretol dosage and

22   the jail complied with the prescribed dosage change. *Id.* The jail also arranged for MRI scans of

23   Plaintiff's cervical and thoracic spine to be performed at Harborview on December 29, 2017. *Id.*

After seeing Dr. Oakes, Plaintiff developed what was determined to be an allergy to Tegretol evidenced by a rash and low while blood cell count (neutropenia). Plaintiff was treated at Harborview ER on January 24, 2018. Plaintiff's neurologist subsequently prescribed Keppra as an alternative to Tegretol, which the jail initiated. *Id.* The jail also arranged for a follow-up visit with Plaintiff's neurologist, but the appointment was cancelled because Plaintiff was taken into custody by the Department of Corrections.

Defendants aver that contrary to Plaintiff's claim he suffered flu symptoms for six weeks between December 2017 and January 2018, Plaintiff's medical records "do not indicate any fever, weight loss, lack of care, or complaints of having flue (with the exception of the kite dated December 12, 2017 in which Plaintiff states he has the flu.)." *Id.* at 4. Between December 6, 2017 and January 24, 2018, Plaintiff was seen by an RN at the jail on 12 separate occasions and seen in the jail clinic by an ARNP or MD on five separate occasions. *Id.* at 5.

Defendants also aver Plaintiff's medical records indicate Plaintiff did not make any complaints to the jail about vision problems or eye trouble and that his claim of retinal detachment on April 9, 2018, is 28 days after he left the custody of the jail. *Id.*

## SUMMARY JUDGMENT STANDARD

The Court should grant summary judgment when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact that would preclude the entry of judgment as a matter of law. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). The party seeking summary dismissal of a claim "bears the initial responsibility of informing the district court of the basis for its motion" (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) and identifying those portions of the materials in the record that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)(1)).

REPORT AND RECOMMENDATION - 4

1   Once the moving party has satisfied its burden, it is entitled to summary judgment if the

2   non-moving party fails to designate "specific facts showing that there is a genuine issue for

3   trial." *Celotex Corp.*, 477 U.S. at 324. "The mere existence of a scintilla of evidence in support

4   of the non-moving party's position is not sufficient:" the opposing party must present probative

5   evidence in support of its claim or defense. *Arpin v. Santa Clara Valley Transp. Agency*, 261

6   F.3d 912, 919 (9th Cir.2001); *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551,

7   1558 (9th Cir.1991). In other words, "summary judgment should be granted where the

8   nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its

9   favor." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir.1995).

10   **DISCUSSION**

11   Plaintiff alleges his civil rights have been violated under 42 U.S.C. § 1983 by Defendants'

12   indifference to his medical needs. In order to sustain a civil rights action, Plaintiff must show (1)

13   he suffered a violation of rights protected by the Constitution or created by federal statute, and

14   (2) the violation was proximately caused by a person acting under color of state or federal law.

15   *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To satisfy the second prong, a

16   plaintiff must allege facts showing how individually named defendants caused, or personally

17   participated in causing, the harm alleged in the complaint. *See Arnold v. IBM*, 637 F.2d 1350,

18   1355 (9th Cir. 1981).

19   Plaintiff names the jail, the county, and the state superior court as Defendants. He also

20   names Dr. Sanders and other unnamed medical staff.  A defendant cannot be held liable solely on

21   the basis of supervisory responsibility or position. *Monell v. Department of Social Servs., of City*

22   *of New York*, 436 U.S. 658, 691-694 (1978).  Rather, a plaintiff must allege that a defendant's

23

1   own conduct violated the plaintiff's civil rights.  *City of Canton, Ohio v. Harris*, 489 U.S. 378,

2   385-90 (1989).

3        A local government unit or municipality can be sued as a "person" under § 1983.  *Monell*,

4   436 U.S. at 691. However, a municipality cannot be held liable under § 1983 solely because it

5   employs a tortfeasor. *Id*. A plaintiff seeking to impose liability on a municipality under § 1983

6   must identify a municipal "policy" or "custom" that caused his or her injury. *Bryan County*

7   *Commissioners v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell* 436 U.S. at 694).

8        Plaintiff alleges Defendants were indifferent to his medical needs. His allegation

9   potentially spans the time period in which he was both a pretrial detainee, and post-conviction

10  detainee. A pretrial detainee's right to adequate medical care arises under the due process clause

11  of the Fourteenth Amendment. *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1120 (9th Cir. 2018).

12  The elements of such a claim are:

13          (i) the defendant made an intentional decision with respect to the conditions under
            which the plaintiff was confined; (ii) those conditions put the plaintiff at
14          substantial risk of suffering serious harm; (iii) the defendant did not take
            reasonable available measures to abate that risk, even though a reasonable official
15          in the circumstances would have appreciated the high degree of risk involved—
            making the consequences of the defendant's conduct obvious; and (iv) by not
16          taking such measures, the defendant caused the plaintiff's injuries.

17  *Id.* at 1125. "With respect to the third element, the defendant's conduct must be objectively

18  unreasonable, a test that will necessarily 'turn[ ] on the facts and circumstances of each particular

19  case.'" *Id.* (quoting *Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)

20  (quoted sources omitted)). A defendant's "mere lack of due care" is insufficient to state a

21  Fourteenth Amendment claim. *Id.* (quoting *Castro*, 833 F.3d at 1071 (quoted source omitted)).

22  Thus, a plaintiff must "prove more than negligence but less than subjective intent—something

23  akin to reckless disregard." *Id.* (quoting *Castro*, 833 F.3d at 1071).

1    In contrast, a post-conviction prisoner's right to adequate medical care arises under the

2  Eighth Amendment. To establish an Eighth Amendment violation related to medical care, an

3  inmate must prove "acts or omissions sufficiently harmful to evidence deliberate indifference to

4  serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Clouthier v. Cnty.*

5  *of Contra Costa*, 591 F.3d 1232, 1241 (9th Cir. 2010). "Dental care is one of the most important

6  medical needs of inmates." *Hunt v. Dental Dept.*, 865 F.2d 198, 200 (9th Cir. 1989). Deliberate

7  indifference to serious medical needs of prisoners constitutes the unnecessary and wanton

8  infliction of pain. *Estelle*, 429 U.S. at 104 (internal citation omitted); *see Hudson v. McMillan*,

9  503 U.S. 1, 6 (1992). An Eighth Amendment medical claim has two elements: (1) "the

10  seriousness of the prisoner's medical need and [(2)] the nature of the defendant's response to that

11  need." *McGuckin v. Smith,* 974 F.2d 1050, 1059 (9th Cir.1991), *overruled on other grounds by*

12  *WMX Techs., Inc. v. Miller,* 104 F.3d 1133 (9th Cir.1997) (en banc).

13    A medical need is serious "if the failure to treat the prisoner's condition could result in

14  further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974

15  F.2d at 1059 (quoting *Estelle*, 429 U.S. at 104), *overruled on other grounds by WMX Techs. v.*

16  *Miller*, 104 F.3d 1133 (9th Cir. 1997). "The existence of an injury that a reasonable doctor or

17  patient would find important and worthy of comment or treatment; the presence of a medical

18  condition that significantly affects an individual's daily activities; or the existence of chronic and

19  substantial pain are examples of indications that a prisoner has a 'serious' need for medical

20  treatment." *Id.* at 1059-1060.

21    If a plaintiff shows he suffered from a serious medical need, he must then show the

22  prison officials responded to the serious medical need with deliberate indifference. *See Farmer v.*

23  *Brennan*, 511 U.S. 825, 834 (1994). To establish deliberate indifference, "the official must both

REPORT AND RECOMMENDATION - 7

1   be aware of facts from which the inference could be drawn that a substantial risk of serious harm

2   exists, and he must also draw the inference." *Id.* at 837. Deliberate indifference to a prisoner's

3   serious medical need requires "a purposeful act or failure to act on the part of the defendant."

4   *McGuckin*, 974 F.2d at 1060; *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

5        Deliberate indifference "may appear when prison officials deny, delay or intentionally

6   interfere with medical treatment, or [ ] may be shown by the way in which prison physicians

7   provide medical care." *Hutchinson v. U.S.*, 838 F.2d 390, 394 (9th Cir. 1988). However, delay in

8   providing a prisoner dental treatment does not constitute an Eighth Amendment violation unless

9   the delay causes substantial harm. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d

10  404, 407 (9th Cir. 1985); *Amarir v. Hill*, 243 Fed. Appx. 353, 354 (9th Cir. 2007). A prison

11  official may be held liable "only if he knows that inmates face a substantial risk of serious harm

12  and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at

13  847.

14       The indifference to medical needs must be substantial; a constitutional violation is not

15  established by negligence or "an inadvertent failure to provide adequate medical care." *Estelle*,

16  429 U.S. at 105-06; *Anthony v. Dowdle*, 853 F.2d 741, 743 (9th Cir. 1988).  Nor does a

17  difference of opinion between an inmate and medical authorities regarding proper medical

18  treatment give rise to a § 1983 claim. *Franklin v. Oregon, State Welfare Div.*, 662 F.2d 1337,

19  1344 (9th Cir. 1981); *Toguchi v. Chung*, 391 F.3d 1051, 1057-58 (9th Cir. 2004); *see also*

20  *Estelle*, 529 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely

21  because the victim is a prisoner."). An inmate must show the course of treatment chosen "'was

22  medically unacceptable under the circumstances . . . and . . . that they chose this course in

23

conscious disregard of an excessive risk to plaintiff's health.'"  *Toguchi*, 391 F.3d at 1058

(quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1986)).

Here, Plaintiff alleges Defendants violated his constitutional rights by failing to provide

him adequate medical care. However, there can be no dispute that based upon the record in this

case, Plaintiff's allegations fail.  First, this is not a case in which Defendants ignored Plaintiff's

medical needs or refused to examine or treat him. Plaintiff makes conclusory allegations that

Defendants denied him adequate care. However the record shows Plaintiff was screened for his

health needs upon arrival at the jail; provided Plaintiff with his prescribed dosage of Tegretol,

arranged for Plaintiff to be seen by his treating neurologist at the University of Washington

Medical Center; complied with the treating doctor's new prescription of Tegretol, arranged for

Plaintiff to received MRI scans of his neck and back; had Plaintiff reexamined by the

Harborview Medical Center ER when Plaintiff developed an allergy to Tegretol; and complied

with the treating physician's new prescription of Keppra.

The record also established that contrary to Plaintiff's claim of untreated flu for six weeks

Plaintiff reported flu on only one day and that during the time period in question, he was seen

numerous time both by the RN at the jail and by the jail medical clinic. And lastly, Plaintiff's

claim about vision problems are belied by the fact that his medical records do not indicate any

vision complaints while Plaintiff was at the King County Jail and that the first complaint of any

vision problem, including detached retina, was made 28 days after Plaintiff had left the custody

of the King County Jail.

At best, Plaintiff complaint amounts to an allegation that he believes his medical care at

the jail could have been better or that he should have received a different course of treatment.

However, as noted above a difference of opinion between a prisoner and medical authorities

regarding proper medical treatment does not give rise to a § 1983 claim. The Court also notes Plaintiff developed the Tegretol allergy based upon the prescription issued by his treating neurologist at the University of Washington, and not a prescription issued by Defendants. Further there is no evidence the medical staff was negligent and even if there were, negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

Plaintiff also argues his guilty plea should be invalidated because he was coerced by the lack of medical care provided by Defendants. This is a challenge to Plaintiff's conviction and his confinement. Where a prisoner challenges the fact or duration of his confinement, his sole federal remedy is a writ of habeas corpus. *Preiser v. Rodriguez*, 411 U.S. 475, 489–90 (1973). In *Heck v. Humphrey*, 512 U.S. 477 (1994), the United States Supreme Court held a § 1983 claim that calls into question the lawfulness of a prisoner's conviction or confinement does not accrue "unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." *Id.* at 489. Where the § 1983 action would necessarily imply the invalidity of a conviction or sentence, the claim may not proceed. *See Edwards v. Balisok,* 520 U.S. 641, 646-48 (1997). If success on the action demonstrates invalidity of confinement or the duration of confinement, such a claim may not be brought under § 1983. *Whitaker v. Garcetti,* 486 F.3d 572, 583-85 (9th Cir. 2007). To the extent plaintiff's §1983 challenges the legality of his criminal conviction thus the duration of his confinement, plaintiff's claim is barred by *Heck*. A claim for damages for allegedly unconstitutional imprisonment is not cognizable unless the conviction or sentence has already been invalidated. *Heck*, 512 U.S. at 487.

The Court also notes Plaintiff has filed a "motion to compel [sic] telephonic hearings, depositions and trial." Dkt. 41. Defendants oppose the motion. Dkt. 43. By this motion, Plaintiff

1    moves the Court to order non-Defendant Washington Department of Corrections to allow the

2    Plaintiff to utilize their video conferencing tools for purposes of telephonic hearings, depositions

3    and trial. Dkt. 41. Plaintiff contends the DOC and/or Stafford Creek Corrections Center currently

4    has a policy that prevents civil litigants from accessing video conferencing tools for civil trial

5    issues, including hearings, depositions or other legal needs. *Id.*

6         To the extent Plaintiff's motion derives from his previous motion to compel discovery

7    (Dkt. 36) that motion was previously denied based upon Plaintiff's failure to comply with the

8    discovery rules. *See* Dkt. 41. Furthermore, no hearings or trial date need be set as the Court

9    recommends granting Defendants' motion for summary judgment. Defendants also assert, in

10   opposing the motion, that no depositions have been scheduled at this point. Dkt. 43. Plaintiff did

11   not file a reply or otherwise refute Defendants' assertion on this point. Accordingly, to the extent

12   Plaintiff's motion is not moot, it is premature and is denied on that basis.

13        The Court also notes that the DOC is not a defendant in this action and, thus, to the extent

14   Plaintiff is requesting injunctive relief with respect to a non-defendant, it does not have

15   jurisdiction to grant the relief requested. *See Rhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584

16   (1991) ("Personal jurisdiction, too, is an essential element of the jurisdiction of a district ... court,

17   without which the court is powerless to proceed to an adjudication.").

18                   **CONCLUSION**

19        For the foregoing reasons, the Court recommends that Defendants' motion for summary

20   judgment be GRANTED and the case be dismissed. The record establishes Defendants were not

21   deliberately indifferent to Plaintiff's medical needs and instead provided him regular medical

22   care, followed the directions of his treating doctor and obtained emergency care when Plaintiff

23   had an allergic reaction to the medication that his treating doctor prescribed. Plaintiff's claim of

REPORT AND RECOMMENDATION - 11

untreated flu and vision problems are contradicted by the jail's medical records showing regular care and no complaints of vision problems at the jail. Because the Court concludes the record shows Defendant did not violate Plaintiff's rights, the Court need not address the claim of qualified immunity. Also, Plaintiff request that his guilty plea be invalidated due to Defendants' actions is not cognizable as it is barred under *Heck v. Humphry.* The Court should also DENY Plaintiff's motion, Dkt. 41, requesting the Department of Corrections, a non-party, be ordered to provide teleconferencing for hearings and discovery and a trial.

## OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order. Therefore, Plaintiff should not file a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **October 6, 2021.** The Clerk should note the matter for **October 8, 2021**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. The failure to timely object may affect the right to appeal.

DATED this 21st day of September, 2021.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 12